EVERETT, Judge.
This action arises out of a collision which occurred on January S, 1970, at the intersection of North Acadian Thruway and Winbourne Avenue in the City of Baton Rouge.
North Acadian Thruway is a four-lane roadway, having two lanes for traffic proceeding south and two lanes for traffic proceeding north. Winbourne Avenue, at the time of the accident, was a two-lane street for east and west traffic. There are no separate lanes to accommodate left turning vehicles on North Acadian Thruway at this intersection. The intersection is controlled by a semaphore traffic signal having red, green and caution lights and, additionally, “green arrow lights” which protect left turning vehicles.
On the day of the collision, E. A. Autrey was motoring in a southerly direction in the right outside lane of Acadian Thruway travelling below the posted speed limit. He testified that he observed, within approximately one block from the intersection, that the light was green for his lane of travel. He further testified that there was another vehicle in a stationary position in the left lane of Acadian Thruway on the inside lane accommodating southerly travel and he assumed that the car was waiting for a “green arrow” to turn left. He testified that other vehicles passed through the intersection in both a northerly and southerly direction, further suggesting that the traffic signal was green for travel north and south on Acadian. E. A. Autrey states that the collision occurred when the tractor-trailer vehicle being driven by Thomas Walker, the agent, servant and employee of Earl Gibbon Transport, Inc., suddenly, and without giving any signals, turned left immediately in front of his vehicle.
The tractor-trailer vehicle is approximately SO feet long and the point of impact was fixed at the rear of the tractor-trailer vehicle and the front of the Autrey vehicle.
There was light precipitation and the sky was overcast. No independent eyewitness to the accident was summoned by either party.
The driver of the truck, Thomas Walker, testified that he saw the Autrey vehicle coming on Acadian Thruway from the opposite direction and testified that the light was red for his lane of travel as he approached the intersection. He was watching the light, knowing the sequence in which the light changed on this semaphore traffic signal and wanting to be sure that he timed his speed to allow himself to turn left at the intersection when the “green arrow light” came on. When it did come on, he made a left turn onto Winbourne without stopping, gearing down his vehicle at the time he was making the turn. He states that immediately before he commenced execution of the left turn the traffic signal showed a “green arrow” indicating permission for vehicles travelling north to make a left turn.
The physical evidence adduced immediately after the collision establishes that the tractor-trailer vehicle blocked traffic proceeding in a southerly direction on North Acadian Thruway and that a portion of the tractor-trailer vehicle had already entered Winbourne.
It was stipulated by and between counsel that the traffic light facing the north *549 bound traffic on Acadian Thruway changes from red to green and then to “green arrow”.
The pivotal issue in this matter is simply which party was favored by the traffic signal. We have carefully examined the record in this matter and we affirm.
We do not feel that those principles which address themselves to the duty of left turning motorists or to motorists having “the last clear chance”, these principles being argued respectively by opposing parties, are applicable in this matter. The issue here is factual and the testimony of E. A. Autrey appears candid, forthright and convincing while the testimony of Thomas Walker, though seeming plausible, indicates some confusion. The recollection of Thomas Walker is not clear. We are satisfied that E. A. Autrey could not have avoided the accident after the tractor-trailer vehicle crossed over into his lane of travel.
The City-Parish Authority of East Baton Rouge was originally made a defendant herein; however, the record reflects that the district court properly sustained the exception removing the Authority as a defendant. Both drivers, as well as the investigating officer, testified that the traffic signal was in proper working condition and there was no testimony to indicate that the Authority or any of its employees or agents were guilty of any negligence.
We also conclude that the record discloses that the district court did not abuse its discretion in making its award to E. A. Autrey. He was immediately taken to the hospital where it was found that he suffered a laceration of the lower lip, rib fractures and contusions to both knees. He remained at the hospital for three days, being fitted with a rib belt, and the laceration of the lower lip was sutured. There is residual scarring of both knees and he apparently suffered pain and soreness for some time.
The plaintiffs most serious injuries were to his teeth, mouth and jaw. One tooth was actually lost by the force of the blow received in the collision and five others were subsequently surgically removed from the lower jaw because the blow loosened the teeth to the extent that they would not repair. The plaintiff also ultimately lost four upper teeth and has suffered periodontitis and a sensitive gag reflex with the inability to tolerate the lower denture in the mouth.
As Pastor of the Brownsfield Baptist Church the plaintiff is called upon to preach several times a week and, additionally, ' his pastoral duties require him to present himself before the public daily. The evidence reflects that plaintiff has suffered great embarrassment and has had difficulty in securing proper denture fitting. Counsel for plaintiff argues that the award of $22,000.00 is grossly inadequate. We do not agree. We find no error in the amount awarded by the district court.
Additionally, the intervention filed on behalf of the compensation insurer of the plaintiff’s employer indicates that interve-nor has paid medical expenses in the amount of $1,332.53 and $574.00 in weekly compensation benefits. An award was made accordingly by the district court and this is affirmed.
The plaintiff applied for a new trial representing that the district court committed error in' failing to grant the plaintiff the property damage for his automobile. His application was denied. The plaintiff answered the appeal submitting that the award to the plaintiff should be increased for general damages and future loss of income; however, the answer to the appeal does not include the prayer for granting property damage. This issue is not before us.
Costs of this appeal will be cast to the defendant-appellant.
Affirmed.